PAUL SIBLEY & another *vs.* THOMAS N. HOAR & another.

A lease, from the owner of a scythe shop and water power, of a building adjoining his shop, "for the purpose of carrying on the foundry business," "with the right to take water power from the wheel and shaft that now carries a fan bellows in said scythe shop at all times when there is water sufficient to carry a fan bellows to blow for the stack in said foundry," gives the lessee no right to use the water power for any other purpose than a fan bellows, even though properly incidental to the foundry business, so as to impede the lessor's fan bellows.

In an action for removing a belt by which water power was communicated to the plaintiff's machinery, and placing it so as to run the defendant's machinery, accompanied with a claim of right so to do, and with such forcible acts and threats as to lead the plaintiff to believe that such interruption would be continued, the plaintiff cannot recover, as damages, for the expense and delay of fitting up another wheel to drive his machinery.

ACTION OF TORT for entering the plaintiffs' scythe shop in Athol, and there attaching a belt to a drum of the wheel, used by the plaintiffs to blow a fan bellows, and impeding the progress thereof, and rendering the power of said wheel and its gearing of no use to the plaintiffs, whereby the plaintiffs had been delayed and subjected to great loss in the operations of their scythe shop.

The defendants, Thomas N. Hoar, and Charles G. Hoar his son, in their answers admitted the entry of the shop and attaching of the belt; but denied that the plaintiffs were thereby damnified as alleged; and left it to the plaintiffs to prove whether the acts of the defendants impeded the progress of the plaintiffs' wheel, or rendered its power or gearing of no use to the plaintiffs; and alleged that the said Thomas, and the said Charles by his father's authority, did the acts complained of under and by virtue of a contract in writing made by Parley Sibley, the father of the plaintiffs and former owner of the plaintiffs' shop, with Thomas N. Hoar and Francis Nadeau, on the 8th of February 1848, (a copy of which was annexed to the answers,) and took no more power than was necessary to carry the fan bellows in said contract mentioned.

By that contract Parley Sibley let to Hoar and Nadeau, for five years from the 1st of October 1848, two buildings on the north side of his scythe shop, "for the purpose of carrying on

the iron foundry business," on certain terms and conditions, of the material part of which the following is an exact copy, in words and punctuation: " Said Hoar and Nadeau shall have the right of water power from said Sibley's scythe shop and take said power from the wheel and shaft that now carries a fan bellows in said Sibley's shop at all times when there is water equal to and sufficient for to carry a fan bellows to blow for the stack in said foundry. Also a privilege around said building for all purposes necessary to carry on said foundry work and business. The expense of carrying the aforesaid power from said scythe shop to said foundry is to be borne by the said Hoar and Nadeau."

At the trial in the court of common pleas at December term 1853, before *Mellen,* J., the plaintiffs admitted the execution of the contract; and introduced evidence which tended to prove that in August 1852 the defendants went into the plaintiffs' shop, and were about to displace from the wheel the belt used to carry the plaintiffs' fan bellows, for the purpose of attaching to the wheel the belt by which the mill for milling iron castings in the defendants' foundry was carried; and one of the plaintiffs, interposing, was forcibly held by one of the defendants, while the other slipped off the belt, and put on the belt of the defendants' mill, and forbade the plaintiffs to remove it, and afterwards continued to use the wheel occasionally by means of this belt; that before this time the defendants, on some dispute arising between them and the plaintiffs as to the right to use the wheel, had threatened to take possession of the wheel, and try their right. It also appeared that this belt could be slipped from the drum by any one in the plaintiffs' shop; but the plaintiffs, after this entry of the defendants, discontinued using the bellows wheel, and were at expense and delay in fitting up another wheel to drive the fan for their bellows.

The defendants introduced evidence tending to show that the right leased to Hoar and Nadeau was part of a large water power owned by Parley Sibley; that in April 1848 they built a stack in the building let to them, and fitted into the foundry a shaft adapted for several drums, and fixed a drum thereon, and

arranged a belt leading from the drum of the bellows wheel in the plaintiffs' shop, to carry the fan to blow the defendants' stack; and two or three months afterwards fitted up a mill for milling the iron cast, and attached to the same shaft a second drum, by means of a belt running upon which this mill was carried; that this mill was used from time to time about two hours a day, but only when the plaintiffs' bellows wheel was not working; that milling was part of the business of a foundry, and was essential to its profitable management, when the castings were of suitable size to be milled; that the fan bellows in the plaintiffs' shop could be run at the same time with the defendants' bellows, there being power enough for both; but the plaintiffs' fan bellows could not, as then geared, run at the same time with the defendants' mill, because the motion of the latter was slower; and that the plaintiffs were present from time to time when the defendants were putting in their works, and made no objection to the manner in which they were constructed.

The plaintiffs contended, " first, that the defendants had no right by said contract to use the power of the plaintiffs' bellows wheel, except to carry a fan bellows, to blow for the stack in said foundry; or secondly, if the defendants had a more extensive right, they could not use it to the injury of the plaintiffs, by impeding thereby the speed of their bellows wheel, more than would be occasioned by the operation of blowing a fan bellows for the stack; and that when the defendants took possession of said wheel, for the purpose and in the manner above stated, the plaintiffs had a right to abandon its use, and hold the defendants responsible for stopping the plaintiffs' works, till a new wheel could be prepared."

The defendants denied that they had taken any possession of the wheel; and contended "that the use of the power was not limited to blowing the stack; that that was a measure of the power leased, and that it was competent for the lessee to use it in the proper and legitimate business of a foundry; and that if the right that was leased had been transcended, they would not jointly be liable for any thing except the mere act of entering the plaintiffs' shop and fixing the belt upon the drum."

In regard to the construction of the contract, the presiding judge ruled as follows: " That said contract conveyed to said Thomas N. Hoar and Nadeau a water power at all times equal to that required to carry a fan bellows for a stack in the foundry—not restricted to carrying a fan bellows to blow for a stack in the foundry, but restricted to the business of a foundry; and that this was limited in point of time, when there is a deficiency of water for the use of the grantors in carrying a fan bellows in their scythe shop—this grant to the defendants being subject to the grantors' reserved power to carry a fan bellows in the scythe shop; that the grantees were, by the contract, to use the granted power, subject to the grantors' power so reserved, and were bound to regulate the speed of their machinery, in the use of their power, so as not to interfere with the reserved power of the grantors, and would be responsible for using water beyond the power granted, and for any use of the power in any manner inconsistent with the grantors' right; as, for instance, in preventing the grantors' use of the power, by retarding the machinery of the grantors, so that they could not run the fan bellows for the use of the scythe shop." And the judge instructed the jury that the plaintiffs were entitled to damages, if the operation of the defendants' mill impeded the operation of the plaintiffs' fan, to the injury of the plaintiffs; or if the mill required the use of more power than was sufficient to blow the defendants' stack.

Upon the measure of damages, the judge instructed the jury " that if the defendants merely removed the plaintiffs' belt when they had no power to remove it on the principles above stated, the plaintiffs were entitled to merely nominal damages, as it was the duty of the plaintiffs to restore the belt; but if the acts of the defendants, at the time of the removal of the belt, or in connection with previous threats, were such as to lead the plaintiffs to believe there would be a constant and forcible interruption of their use of their wheel, they had a right to make such alterations in their works as would enable them to carry on their business in the usual manner, and the defendants would be responsible for the damages occasioned by such delay, and the expenses necessarily incurred in such alterations."

The jury found specially that the power used for carrying the mill was not so great as that required to blow the stack, and returned a general verdict for the plaintiffs, with damages assessed in the sum of twenty five dollars; and the defendants alleged exceptions.

*G. F. Hoar*, for the defendants. 1. The contract is to be so construed as to effect the principal intent of the parties, which was to furnish the lessees with power " for the purpose of carrying on the iron foundry business," of which the process of milling was proved to be an essential part. " At all times when there is water," the lessees are to have power " sufficient to carry a fan bellows " ; but their use of the power is unrestricted ; and there is no reservation of power to the lessors. The " wheel and shaft that now carries a fan bellows in Sibley's shop " merely describe the place from which the power is to be taken. If the meaning of the contract be not clear, it should be construed beneficially for the lessees. 23 Amer. Jurist, 258. 2 Bl. Com. 380. *Smith* v. *Davenport*, 34 Maine, 528. *Dexter* v. *Manley*, 4 Cush. 14.

2. The ruling as to the measure of damages was too broad, and permitted the jury to give damages for losses which the plaintiffs might have prevented, and which were not, directly or indirectly, the result of the act of placing the belt on the drum, (which was the only trespass sued for,) but from the apprehension of future trespasses, for which, when committed, the law would afford a recompense. *Jones* v. *Gooday*, 8 M. & W. 146. *Loker* v. *Damon*, 17 Pick. 284. *Batchelder* v. *Sturgis*, 3 Cush. 201. *Miller* v. *Mariners' Church*, 7 Greenl. 51. Besides ; damages not necessarily resulting from the defendants' act cannot be recovered, unless specially declared for. Sedgwick on Damages, (2d ed.) 68. 1 Chit. Pl. (6th Amer. ed.) 441, 442, and cases cited. *Dexter* v. *Manley*, 4 Cush. 14.

*N. Wood*, for the plaintiffs. 1. The right granted to the lessees by the contract is limited to carrying a fan bellows to blow for the stack, and they have no right to use the power for any other purpose. *Ashley* v. *Pease*, 18 Pick. 268. *Biglow* v. *Battle*, 15 Mass. 313. *Dickerson* v. *Mixter*, 13 Met. 217. But if this be not so, the instructions were sufficiently

favorable to the defendants; for they certainly had no right so to use the power for any other purpose, as to impede its use for the plaintiffs' fan bellows. *Dexter* v. *Manley*, 4 Cush. 14. *Hurd* v. *Curtis*, 7 Met. 94. *Kennedy* v. *Scovil*, 12 Conn. 317. *Schuylkill Navigation Co.* v. *Moore*, 2 Whart. 477. Angell on Watercourses, § 148.

2. The ruling on the subject of damages was correct. *White* v. *Moseley*, 8 Pick. 356. *Dickinson* v. *Boyle*, 17 Pick. 78. *Tilden* v. *Metcalf*, 2 Day, 259. *Churchill* v. *Watson*, 5 Day, 140. *Merest* v. *Harvey*, 5 Taunt. 442. *Woert* v. *Jenkins*, 14 Johns. 352. *Welch* v. *Piercy*, 7 Ired. 365. *Heaney* v. *Heeney*, 2 Denio, 625. *Loker* v. *Damon*, 17 Pick. 284.

THOMAS, J. Of the construction given to the written contract, the defendants have no ground of complaint, and the plaintiffs make none.

The matters of damage submitted to the jury were too contingent and remote.

The plaintiffs can take judgment for nominal damages, or a

*New trial in the court of common pleas.*

The plaintiffs elected to take judgment for nominal damages.